I know the Court is familiar with the facts of this case, so very briefly, let me just run this down. We've got two treating physicians, Drs. Walker and Dr. Sarwa, and the vocational experts said that the limitations established by those doctors are incompatible with work-life balance. We have Dr. Salk, the Commissioner's own psychologist, and we have the vocational experts' testimony that that person can't work. We have Dr. Harris, the Commissioner's own testifying medical expert, and we have the vocational experts' testimony that the limitations found by Dr. Harris are incompatible with work. And we have Ms. Kennelly's testimony in not one but two hearings, and we have the Commissioner's vocational experts' testimony that the limitations in her testimony are incompatible with work. But counsel, let me just tell you the problem I have with your case. Here, Dr. Walker, the treating physician, was contradicted by Dr. Cunningham and all the non-examining physicians. Therefore, the specific and legitimate standard applies. The ALJ in this case specifically stated that Dr. Walker's conclusion was inconsistent with the treatment notes. Can you show me anywhere in the record where Dr. Walker's treatment notes are consistent with being unable to sit for 15 minutes? Judge, this Court addressed that exact issue in Oren v. Astru back in 2007, and this Court specifically addressed that fact and said treatment records are not meant to establish residual functional capacity assessments. This Court said treatment records are the purpose of treatment records is to communicate, facilitate communication between health care professionals. With all due respect, Your Honor, and I don't mean this in any negative way, I shouldn't have to answer that question. It's not the claimant's burden to show where in treatment records the limitations themselves are found. You do, however, definitely have to show a medically determinable impairment that can really be a key section. Through the treatment records, where anywhere in the record is there any evidence showing that he was unable to sit for 15 minutes? There isn't evidence in the treatment records, other than Ms. Kennelly's testimony, of course, that would show limitations per se. But that isn't what the statute requires. The statute at 42 U.S.C. 423 requires that the claimant show a medically determinable impairment that could reasonably be expected to lead to the limitations. And it specifically mentions at subsection D that one of the things, two of the things that are considered are the statements of the claimant's physician and the claimant's statements themselves. It's the Social Security Act itself, I think, that really answers your question. And there is no doubt, and even the judge here recognized, that the claimant does suffer from medically determinable impairments that could reasonably be expected to lead to symptoms. Counsel, the question is whether or not she still possesses some residual functional capacity, which is inherently a factual determination. And the problem that Judge Nelson has raised with you is the fact that there is an inconsistency between the opinion testimony that you are trying to rely on and the evidence that was before the finder of fact in making the RFC determination. And that, I think, is fair game for the administrative law judge. If he can't find anything in the doctor's treatment notes to support the opinion, why does he have to credit the opinion? Whether it's fair game, I'm not quite sure how to respond to that part, but I can say this. It's admissible evidence which basically cuts against the disability opinion that's being offered. And it is the responsibility not of the physician, but of the administrative law judge, to determine residual functional capacity. I agree with that entirely. All right. And what happened here was that ALJ looked at the treatment records, considered the opinions of the various physicians, and made a determination that there was simply an insufficient showing that this claimant was totally disabled. All of the things you just said are factually correct. But it is a factual determination. That doesn't mean he was right in doing it. What the ALJ did here was give the most vague reasons I can possibly imagine. He simply said, unsupported by the treatment records. Where? What? Show me the conflict. That's our question for you. Where in the treatment records? The question that we have to answer, I think, is does substantial evidence support the administrative law judge's determination? And the only evidence that we have is the treatment records, the testimony of the claimant, and the opinions of the physicians. And I'm having a hard time coming to the conclusion you want me to come to, which is that substantial evidence does not support the administrative law judge's determination on this record. With all due respect, this is more than a substantial evidence case. The statute, the standard, as you well know, is whether the ALJ's decision is supported by substantial evidence or free of legal error. And here's the problem. This Court, the best case I have is Embry, this Court has said it is not enough when rejecting a treating physician's opinion to simply say it's unsupported by objective factors. And it is legal error for an ALJ to discredit a treating physician's opinion on that basis. But, again, I have to come back to Oren because it is such a good case. Counsel, these are experts in the sense that they're medical professionals who have treated or reviewed the records of the claimant. Now, which ones are you referring to? I'm not going to give you a list of doctors. The point I'm trying to make or the question I'm trying to ask you is, why do we treat these doctors any differently in terms of assessing the weight to be given to their testimony than we do any other expert witness in a civil or criminal case or other administrative proceeding? Well, there's two answers. Again, I'm going to come back to Oren because that's my best case. But let's look at the Commissioner's own record. I'm glad to hear you read Oren. Yes. For those of you who heard that, I wrote the case. I'm aware of that, but I didn't say anything about it. It is a great case. Flattery will get you everywhere. Yeah, okay. Sorry. You brought it up. That will not come out of your time. Okay. But what Oren did so well was it looked at the regulatory framework. It looked at 20 CFR 404.1527. And it said it is the Commissioner's guidelines that mandate special treatment of the treating physician's opinion. It is the Commissioner who says we give treating physician's opinions extra weight because they have a better opportunity to know the individual and they have a greater longitudinal assessment of what is going on. But, you know, if we're going to talk about doctors who haven't treated the claimant, let's not forget Dr. Harris. Dr. Harris is the one doctor where the administrative law judge said, you've qualified as an expert in Social Security cases before. And Dr. Harris said, yes, I have. And then the judge proceeds to take his testimony and then discounts it. So there's legal error there as well. Let me come up on my last two minutes. Certainly, Judge. We'll make sure you have enough time to rebuttal. Don't worry. Let me back off a little bit from the fine grain, although that's part of where this case lives. So the discussion we just had, I think, is crucially important. But I want to back away from it a little bit. Here's the way I see this case. We have a fairly well-educated woman, graduated from university, has taken some courses beyond university, had a series of fairly responsible and stress-inducing jobs as marketing managers, required initiative. It seems to have been an energetic and resourceful woman. When things start to go bad, she does not have the normal profile of a malingerer. In fact, you do these cases all the time. This is not your normal claimant who's sort of been bouncing along the bottom of the food chain for most of their lives. She has trouble waking up. She has trouble with her energy. She finally gets canned from her job. And in her written statement says, I think the reason I got canned from my job was I was late so often. I would miss work because I couldn't do this and so on. I'm forgetful. I can't keep track of my phone calls I'm supposed to make or the appointments that I've made or whatever. We get statements from her husband. None of these are found to be incredible. I mean, this is a perfectly coherent story, and at the level at which I'm talking, coherent with what the doctors are saying as well. This is a husband who married her not all that many years ago, 10 or 12, I kind of forget. Well, I married her because she was so energetic and so active and so lively. Well, I mean, I've seen a steady deterioration. She's just not the person she once was. She complains about pain. She can't lift her hands above her head easily, so she doesn't wash her hair as often as she used to. She keeps it short so it's easier to wash. She says, I'd love to work. I've tried a couple of things. They didn't work out. I quit after a couple of weeks. I mean, I view this woman, and I'm now talking lay terms rather than legal terms. I'm quite confident this woman is not going to work again. Now, whether she's disabled in the sense of the Social Security statute is a different question. What do I do with this person who maybe can be, I'll use kind of facetiously some of the vocabulary, she can be a small parts assembler. A greeter at Walmart type thing. Yeah, yeah. I mean, maybe she can do that. What am I supposed to do with this case? Well, certainly you're absolutely correct is you don't look at just past relevant work. You then look at step five, as you know, at any other work. And there is no credible evidence that shows this woman can do any other work. The findings that the ALJ relied upon are this one-time examiner, Dr. Cunningham. And here's where the district court, I know we're not reviewing the district court's decision, but here's where the district court was dead wrong. The district court said, well, the findings by Dr. Cunningham are sufficient to refute the limitations secondary to fibromyalgia. Nothing could be more untrue. Dr. Cunningham looked at range of motion, gait, sensory findings, motor findings. Those are all neurological things that you see in someone who has a herniated disc or something along those lines. Nothing to do with fibromyalgia. And the great case is Sarchet out of the Seventh Circuit where they say, you know, since range of motion has nothing to do with fibromyalgia, limitation in that regard is no more significant than headache is to having prostate cancer. And I think that's a great analogy in terms of what we're looking at here. So we really don't have anything that's credible that shows this lady at step five can do any other work. And let's remember the burden there is on the commissioner. And the standard is ability to function on a regular and continuing basis. And Ruling 98-6P defines that, eight hours a day, five days a week, or an equivalent work schedule. And clearly, both treating physicians, the examining psychologist, the testifying medical expert, have all shown limitations that are inconsistent with the ability to sustain work. And who said that? The commissioner's vocational expert. Okay. Why don't we hear from the government and then we'll give you a chance to respond. Thank you, sir. Good morning, Your Honors. Gene Turk for the Commissioner of Social Security. I want to start out by saying that I, too, believe that the ALJ provided specific and legitimate reasons for the rejecting the various medical opinions. And he was supported by substantial evidence. For example, in the case of Dr. Walker and Dr. Swart, Dr. Walker gave the opinion that plaintiffs could perform less than sedentary work, sit for 15 minutes, yet nothing in the two and a half years of medical notes from this doctor would support such a conclusion. Dr. Swart. May I just interrupt here due to limited time? I was suggesting in my other question that he did give specific and legitimate reasons, but some of the reasons I'm wondering about, he said the failure to follow up on her treatment. Now, we have cases that say the failure to follow up a treatment doesn't necessarily mean that the pain does not exist. What is your response to that? Well, Your Honor, that was just one of the reasons under the credibility analysis for finding that claimant. But do you agree that that's not dispositive? Not necessarily. Again, a credibility finding is based on a number of factors. And I think when you put all of those factors together, they create a picture that this claimant was not as credible. Again, the ALJ is willing to say that this individual has fibromyalgia. There are some limitations, but not to the point that this woman is totally disabled from performing work, as suggested by the opinions of some of the medical people. But there was another reason he gave, and he talked about activities of daily living, watching TV, reading books, playing on the computer. Now, is a disability claimant supposed to sit in a dark room all day? I mean, aren't these pretty passive activities? Actually, yes, Your Honor. A claimant need not be totally disabled. But this woman had pretty high-end kind of normal activities. She took care of pets. She did gardening. She took two long-distance trips. She read. She sold things on eBay. She used the computer. These are more high-level kinds of normal activities, Your Honor. Long-distance trips. One of them, she sat on an airplane, right? That wasn't clear to me, Your Honor. Yes, she took an airplane to California to visit her girlfriends. And she went to Texas. Yeah, yeah. She drove to Texas to see her father. Yeah, but a long-distance trip on an airplane requires that you sit for a while on the airplane. Well, Your Honor, that's what we're saying, that taken as a whole, the claimant's picture of severe disabling limitations, it just doesn't bear out. If I could go back to the opinions of the treating physicians. Again, these were opinions stated in the medical source statement. They're opinions. When you look at the individual opinions, there is nothing in those documents that would support the claimant's limitations that are stated there. Then you look at the treatment records as a separate issue. Is that opinion well supported by the treatment records? And you put the two together, and you say no. I think a good example is when we look at the consultative examiners, Dr. Salk and Dr. Cunningham. Dr. Salk, psychologist, mental status exam is fine. Yes, when it came to the opinion, Dr. Salk came up with that she could not perform work because of stress and detailed activities. But yet that wasn't in the narrative. Then you look at Dr. Cunningham's report, and you've got his findings, and they are consistent with his opinion. So the ALJ, of course, gave that more weight. And I think when you look at those incongruities between the opinions and the evidence, you will see that the ALJ gave a reasonable interpretation of the evidence, and it's supported by substantial evidence. Realistically. Come again, Your Honor? Realistically. And I understand the language I was talking earlier and the language I'm about to talk may or may not track with the statute of the regulations and so on. Okay. Realistically, is this woman, assuming her condition does not improve, is she going to ever work again? I can't answer that, Your Honor. I would hope she would. Again, the conclusion is that she is able to do maybe not the high-powered active job that she had once before, but that she certainly even allowing for certain flare-ups from fibromyalgia, fatigue, and her alleged pain, that she can perform the work of an office clerk. I think another was a file clerk. And I believe that is true. Okay. Any more questions? No questions. All right. I want to thank you so much for your time and patience. Thank you. Thanks again. Would you like a minute for response? Very briefly, Your Honor. I don't have very much more. But something occurred to me while I was listening to the argument. We were talking about treatment records. The one thing I would like to point out is the medications that the treating doctors prescribed for this woman. Please look at my brief, because I defined them all out of the physician's desk reference. One of them, duragesic, is for cancer pain. It's after all other things have failed, all other opiates have failed. That certainly is something in the treatment records that's pretty telling. If the treating physicians thought that her condition was so severe as to require all of those items, that's a telling point. The only other thing I wanted to mention in terms of the facts of the case was the comment about the Salk report, that the mental status examination was within normal limits. It depends what you mean by mental status examination. A mental status examination is more or less a checklist of things. Are you hearing voices? Do you feel like you're somebody else? Do you have delusions of grandeur, et cetera, et cetera? And, yes, that part was within normal limits. It definitely shows she wasn't psychotic, she wasn't schizophrenic, and that has absolutely nothing to do with dysthymic disorder. And, again, the findings of the reasons for rejecting a doctor's opinion have to be germane to the reasons the doctor gave for the opinion. Forgive me, but that's Orn again. Thank you. Thank both of you for your helpful arguments. The case of Henley v. Aschew is now submitted for decision.
judges: Nelson, Fletcher, Tallman